Dear Mr. Perez:
You have requested the opinion of this office concerning the validity of LSA-R.S. 28:478(B), which prohibits the placing of community homes for the handicapped within 1,000 feet of each other. By way of recent supplemental correspondence, you advise us of the facts which prompt your inquiry and state that there is an existing community home in New Iberia established for adult females which is located at 1412 DeHart Drive, New Iberia, Louisiana. Licensure is sought for a new community home for adolescent males to be located at 1609 E. Patout Street, New Iberia, Louisiana. While the locations are in excess of 1,500 feet by foot or vehicle, the property lines are 957 feet, 4 inches from each other, in contradiction to the 1,000 foot minimal distance limitation imposed by statute.
The Supremacy Clause of the United States Constitution, Article VI, Clause 2, renders unenforceable any state law that conflicts with a federal law. The standard for determining whether or not a state law has been preempted or superseded by federal law was enunciated in the case of Silkwood v. Kerr-McGeeCorporation, 104 S.Ct. 615 (1984), wherein the Supreme Court stated:
 ". . . state law can be pre-empted in either of two general ways. If Congress evidences an intent to occupy a given field, any state law falling within that field is pre-empted . . . (citations omitted) . . . If Congress has not entirely displaced state regulation over the matter in question, state law is still pre-empted to the extent it actually conflicts with federal law, that is, when it is impossible to comply with both state and federal law, . . . (citations omitted) . . . or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress" . . . . Silkwood v. Kerr-McGee Corporation, 464 U.S. 238, 78 L.Ed. 443, 104 S.Ct. 615 (1984), at page 621.
The federal law at issue in the instant matter is the Fair Housing Act, 42 U.S.C. § 3601, et seq.
The Federal Fair Housing Amendments Act of 1988 amended Title VIII of the Civil Rights Act of 1968 to include persons with a handicap as a class protected from discriminatory housing practices under the Fair Housing Act, (hereinafter the "Act".)
Of import in the Act is 42 U.S.C. § 3602 (h), defining "handicap" with respect to a person as:
 (1) a physical or mental impairment which substantially limits one or more of such person's major life activities,
(2) a record of having such an impairment; or
 (3) being regarded as having such an impairment, but such term does not include current, illegal use of or addiction to a controlled substance as defined in section 102 of the Controlled Substance Act (21 U.S.C. § 802).
The 1988 amendments make it unlawful to discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of
(A) that buyer or renter;
 (B) a person residing in or intending to reside in that dwelling after it is sold, rented, or made available; or
(C) any person associated with that person.
See 42 U.S.C. § 3604 (f)(1)(A)(B)(C).
Further, it is unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provisions of services or facilities in connection with such dwelling, because of a handicap of
(A) that person; or
 (B) a person residing in or intending to reside in that dwelling after it is so sold, rented or made available; or
(C) to any person associated with that person.
See 42 U.S.C. § 3604 (f)(2)(A)(B)(C).
Also, the Act states that discrimination includes:
 (B) a refusal to make reasonable accommodations in rules, policies, practices or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling.
See 42 U.S.C. § 3604 (f)(3)(B).
Finally, § 3615 provides for the effect of the Act on state laws, as follows:
 Nothing in this subchapter shall be construed to invalidate or limit any law of a State or political subdivisions of a State, or of any other jurisdictions in which this subchapter shall be effective, that grants, guarantees, or protects the same rights as are granted by this subchapter; but any law of a State, a political subdivision, or other such jurisdiction that purports to require or permit any action that would be a discriminatory housing practice under this subchapter shall to that extent be invalid.
See 42 U.S.C. § 3615; (Emphasis added).
The legal efficacy of the Louisiana statute under the Fair Housing Act or the U.S. or the state constitution has not been addressed by our federal courts nor by any Louisiana state court case. However, there are opposing decisions rendered by the Federal Third and Eighth Circuit Courts on the constitutionality of enactments similar to the one in question. The more recent of the two federal decisions, Horizon House DevelopmentalServices, Inc. v. Township of Upper Southampton,804 F. Supp. 683 (E.D. Pa. 1992), affirmed, 995 F.2d 217 (3d Cir. 1993), held facially invalid a municipal ordinance requiring a distance of at least 1,000 feet between community homes for the handicapped, invalidated under the terms of the Fair Housing Act because the ordinance created an explicit classification based on handicap with no rational basis or legitimate government interest. In contrast is the holding in Familystyle of St.Paul v. City of St. Paul, 923 F.2d 91 (8th Cir. 1991). One distinction between the two cases is that in Horizon House,supra, the court found that the city ordinance distancing the homes for the handicapped evidenced a discriminatory intent to exclude the handicapped from residing in the proposed affected neighborhoods, while in Familystyle, supra, the statute in question reflected a nondiscriminatory motive in spreading out the handicapped, namely, to facilitate their integration into the mainstream of society, rather than isolating them in enclaves of treatment facilities.
Interpreting LSA-R.S. 28:478 (B), the Louisiana statute, this office has previously concluded in Attorney General Opinion 90-653:
 The intent here is to facilitate the dispersion and full integration of the handicapped into neighborhoods of the non-handicapped, to promote the unstructured interaction between the two, and thereby enhance the handicapped individuals' sense of personal dignity, worth, and acceptance by others. This intent is defeated if community homes were to "cluster", and thereby reisolate handicapped persons within their own peer group. In this sense the statute is faithful to the constitutional purpose which it intends to secure. LSA-R.S. 28:476 declares the legislative purpose to be to secure the right to individual dignity guaranteed by La. Const. Art. I, Sec. 3 (1974); See Attorney General Opinion 90-653, page 1.
The author of Opinion 90-653 came to his legal conclusions prior to the rendition of the federal decision of Horizon,supra. Based upon the federal court's recent decision and our review of the legislative history of the amendments to the Fair Housing Act, we must reevaluate the conclusions of the author of Opinion 90-653. We now conclude that under the standard enunciated in the case of Silkwood v. Kerr-McGeeCorporation, supra, our state law is superseded by the provisions of the Fair Housing Act, as the minimal distance of 1,000 feet between these homes for the handicapped stands as an "obstacle to the accomplishment of the full purposes and objectives of Congress". See Silkwood, supra, at page 621. Such purposes were delineated by the House Judiciary Committee as follows:
 These new subsections would also apply to state or local land use and health and safety laws, regulations, practices or decisions which discriminate against individuals with handicaps. While state and local governments have authority to protect safety and health, and to regulate use of land, that authority has sometimes been used to restrict the ability of individuals with handicaps to live in communities. * * *
 The committee intends that the prohibition against discrimination against those with handicaps apply to zoning decisions and practices. The Act is intended to prohibit the application of special requirements through land-use regulations, restrictive covenants, and conditional or special use permits that have the effect of limiting the ability of such individuals to live in the residence of their choice in the community. (Emphasis added). H R Rep No. 100-711, 100th Cong, 2d Sess 24, reprinted in 1988 US Code Cong Admin News 2185.
In reference to 42 U.S.C. § 3604 (f)(2), the House Committee on the Judiciary further stated:
 This provision is intended to prohibit special restrictive covenants or other terms or conditions, or denials of service because of an individual's living arrangements for persons with handicaps.
H.R. Rep. No. 711, 100th Cong., 2d Sess. 22 at 18 (1988).
It is the opinion of this office that the distance limitation imposed by LSA-R.S. 28:478(B) squarely contradicts the goals and objective of the amendments to the Act, as articulated by the Judiciary Committee. Based upon these stated purposes and objectives, and the court's reasoning in the recent federal decision of Horizon, supra, we now determine that the minimal distance requirement of 1,000 feet between homes of the Louisiana statute, LSA-R.S. 28:478(B), is preempted by the federal supremacy clause. It is our conclusion that, to the extent that LSA-R.S. 28:478(B) requires action which would be a discriminatory housing practice under the Fair Housing Act, a court would most likely determine our state law to be unenforceable. For these reasons, we advise that the Department of Health and Hospitals may issue the permit of licensure for the community home in New Iberia.
Should you need the further assistance of this office, please feel free to contact us.
Sincerely,
 RICHARD P. IEYOUB Attorney General
 BY: KERRY L. KILPATRICK Assistant Attorney General
KLK:ams